Argued and submitted September 14, reversed and remanded for reconsideration
December 9, 1987

# PRECISION CASTPARTS CORP.,
*Petitioner,*

*v.*

# EMPLOYMENT DIVISION et al,
*Respondents.*

## (87-AB-512; CA A44046)

746 P2d 740

Susan P. Graber, Portland, argued the cause for petitioner.

With her on the briefs was Stoel, Rives, Boley, Jones & Grey, Portland.

Dave Frohnmayer, Attorney General, and Jerome Lidz, Assistant Attorney General, Salem, waived appearance for respondent Employment Division.

No appearance for respondent Richard P. Cullison.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

WARREN, J.

## WARREN, J.

Employer seeks review of an order of the Employment Appeals Board affirming the referee's determination that claimant is eligible to receive unemployment compensation, because he was discharged for an isolated instance of poor judgment rather than for misconduct. ORS 657.176(2); OAR 471-30-038(3). Because we conclude that there are questions of credibility which the referee did not address and because the referee reached a conclusion that does not follow from the findings, we reverse and remand for reconsideration.

The referee made these findings:

"(1) Claimant worked for this employer as a machinist from March 12, 1979 until January 5, 1987. (2) Claimant worked the swing shift from 3:30 pm until 11:30 p.m. (3) Claimant's last day of work was December 19, 1986. (4) Prior to that date, the machinist's supervisor had notified his employes that they would be allowed an extra 30-minute lunch break with pay on December 23 as a Christmas gift. (5) The claimant was scheduled for vacation from December 20, 1986, until January 4, 1987. (6) Since claimant was going to be gone on December 23, he figured that the employer would let him leave 30 minutes early on December 19. (7) Claimant approached the lead man with the idea on December 19 around 8:00 pm. (8) The lead man was receptive to the suggestion believing that claimant would take the time off without pay. (9) The claimant, on the other hand, understood the lead man to have authorized time off with pay.

"(10) Claimant completed his work, cleaned up his machine and was ready to leave around 11:00 pm. (11) The lead man refused to sign his time card indicating that the time off would be without pay and would be considered as an incident of absence. (12) The lead man then instructed the claimant to work on his machine. (13) Re-starting the machine and re-cleaning it would have taken approximately 25 minutes. (14) The claimant figured that it would be more productive to help a co-worker clean his machine. (15) Claimant worked with another co-worker until the end of his shift."

The referee then stated: "The facts are basically not disputed. Credibility is not an issue." In fact, there are contradictions in the record as to two of the findings. Finding (15) states that claimant worked with a co-worker until the end of his shift. Employer's witness flatly contradicted claimant's testimony to that effect and stated that, after claimant was told to restart his machine, he just walked around the shop

talking to other operators and interfering with their work. Finding (13) states that restarting the machine and recleaning it would have taken approximately 25 minutes. Although claimant testified to that effect, employer's witness testified that the machine could have been restarted and used productively for the remaining time and that no additional clean-up would have been required. Both findings are relevant to determining whether claimant's failure to restart his machine was misconduct or poor judgment. The referee should not have made those findings without resolving the credibility issues presented by the evidence. *See Allen v. Employment Division,* 73 Or App 426, 698 P2d 1009 (1985).

Additionally, the referee's opinion contains this conclusion:

> "While claimant's reaction to the lead man's direction was improper, it was not wilful. Claimant did not intend to disobey."

The referee's findings do not support the conclusion that claimant did not intend to disobey the lead man's order. As the referee found, the lead man instructed claimant to return to his machine and claimant refused. That refusal may have been wilful in that it was a conscious decision made by claimant not to do what he had been instructed to do. Whether it was a wilful isolated instance of poor judgment or wilful misconduct is for the referee to determine only after determination of the credibility issue. *See Bunnell v. Employment Division,* 304 Or 11, 741 P2d 887 (1987).[1]

---

[1] Division's administrative rule, OAR 471-30-038(3), defines disqualifying misconduct:

> "[M]isconduct is a wilful violation of the standards of behavior which an employer has the right to expect of an employe. An act that amounts to a wilful disregard of an employer's interests * * * is misconduct. Isolated instances of poor judgment, good faith errors, unavoidable accidents, absences due to illness or other physical or mental disabilities, or mere inefficiency resulting from lack of job skills or experience are not misconduct for the purposes of denying benefits under ORS 657.176."

The Supreme Court recognized in *Bunnell* that the rule was promulgated as an attempt to capsulize several Court of Appeals holdings on what constitutes misconduct and quoted from Judge Tanzer's dissenting opinion in *Lundy v. Employment Div.,* 34 Or App 265, 269-70, 578 P2d 476 (1978):

> "A preliminary distinction must be made. Unsatisfactory conduct for which an employe may properly be discharged is not necessarily misconduct warranting disqualification from unemployment compensation. *See Giese v. Employment*

Reversed and remanded for reconsideration.

---

*Div.,* 27 Or App 929, 933, 557 P2d 1354 (1976) *rev den* (1977); *Geraths v. Employment Division,* 24 Or App 201, 544 P2d 1066 (1976); T. Broden, Law of Social Security and Unemployment Insurance, § 12.01 (1962). While an employer may discharge an employe for any reason, or for a whim, the discharge is not for misconduct under ORS 657.176(2)(a) unless the employe's improper conduct is in disregard of and injurious to the employer's legitimate interests. Thus, this case deals not with cause for termination, but with cause for restricting unemployment compensation.

"An isolated instance of poor judgment or a single, nondeliberate violation of an employer's rules is not misconduct requiring disqualification from compensation. *Dietz v. Smith,* 28 Or App 871, 875, 561 P2d 1032 (1977); *Babcock v. Employment Div.,* 25 Or App 661, 665, 550 P2d 1233 (1976). On the other hand, isolated acts may constitute misconduct where they involve deliberate violation or disregard of standards of behavior which the employer has a right to expect of its employes. *Erickson v. Employment Div.,* 29 Or App 893, 896, 565 P2d 1101 (1977); *Romanosky v. Employment Div.,* 21 Or App 785, 788, 536 P2d 1277 (1975)." *Bunnell v. Employment Division, supra,* 304 Or at 14.

The clear sense of those cases is that, although an employe may be discharged for any reason, a discharge is not for misconduct disqualifying the individual from receiving benefits unless the conduct is in disregard of and injurious to the employer's legitimate interests. An isolated instance of poor judgment or a nondeliberate violation of an employer's rules is not misconduct. However, an isolated act can be misconduct, if it involves a deliberate violation of the standards of behavior which an employer has a right to expect.

OAR 471-30-038(3) seemed ambiguous to the Supreme Court, because, although it defines disqualifying misconduct as a wilful violation of the standards of behavior which an employer has a right to expect, it does not expressly state that a wilful violation cannot also be an isolated instance of poor judgment; that is, it does not state that the two types of conduct are mutually exclusive. The court interpreted the rule to say that a wilful violation can also be a nondisqualifying isolated instance of poor judgment. That reading seems to be contrary to the cases that inspired the rule, *see Lundy v. Employment Div., supra,* 34 Or App at 269 (Tanzer, J., dissenting), and also contrary to Division's definition of "misconduct." The Supreme Court made its own (apparently *de novo*) conclusions on the basis of the referee's findings. It held that "the referee and EAB could reasonably conclude from [the] facts that claimant's conduct constituted a wilful violation of the standards of behavior which * * * employer had a right to expect," *Bunnell v. Employment Division, supra,* 304 Or at 16, but then said that the evidence would not support the conclusion that the conduct was more than an isolated instance of poor judgment. We are bound by the Supreme Court's interpretation of OAR 471-30-038(3), which is the source of the phrasing of our disposition.